[Crim. No. 1533. Second Appellate District, Division One.—October 13, 1927.]

THE PEOPLE, Respondent, v. SAMUEL H. DEYOT, Appellant.

Paul C. Hill and Marcus Clark for Appellant.

U. S. Webb, Attorney-General, and Frank Richards and John L. Flynn, Deputies Attorney-General, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of the crime of embezzlement and from an order denying his motion for a new trial.

The only point on which appellant relies for a reversal of the judgment is that the evidence was insufficient to support the verdict.

From the record it appears that defendant had a contract or an option with certain stockholders of a corporation to sell their stock therein for a price of approximately $200,000, for which service defendant was to receive a fixed amount in cash and stock in the corporation; that in preparing to make such sale defendant apparently required some assistance in the way of ready cash, and in order to acquire same, or a portion thereof, he entered into a contract with one Marie Taylor by which, among other things, defendant agreed "that in consideration of Marie Taylor's syndicating with him and investing the sum of $3,000 *to assist in financing and acquiring a valuable interest* with said company, he will return the investment of $3000 within twelve months from date, with interest at seven per cent per annum, and will cause to be issued, as the office of the Corporation Commissioner of California may direct, to said Marie Taylor by the Columbia Cement Company, not less than $12,000 common stock at par, . . . "

Although the prosecuting witness testified in substance that she gave the $3,000 to defendant for the purpose of making an "investment," or for the purchase of "a valuable interest," and that the $3,000 was to be returned to her at the end of one year, with interest at the rate of seven per cent per annum, together with not less than $12,000 in stock of the corporation, nevertheless the evidence shows that a part only of the $3,000 was repaid to the prosecuting witness, and that she received none of the stock of the corporation. Her testimony as to whether such "valuable interest" was to be acquired in her behalf, or for defendant personally, included the following:

"Q. Mrs. Taylor, did he say he was going to give you the interest, the valuable interest in the company, that he was to purchase? A. No. . . .

"Q. Was anything said by Mr. Deyot that you were to have that interest? A. No. He was to give me $12,000 worth of stock. . . .

"Q. Now, I will refer you to a conversation of March 14, 1924, at the time this agreement was entered into; did you have any conversation at that time with Mr. Deyot regarding the formation of a partnership with Mr. Deyot? A. Why, no. He said that he wanted to purchase a valuable interest in the company, and that is why he needed my money. . . .

"Q. Did Mr. Deyot tell you at that time what valuable interest he intended to purchase in that company? A. No. He just said it was a valuable interest in the company. . . .

"Q. I will show you this agreement under date of March 14, 1924, which has been offered in evidence as People's Exhibit No. 1, and calling your attention to the portion of the agreement which reads as follows: 'and Deyot hereby agrees that in consideration of Marie Taylor's syndicating with him and investing the sum of $3000 to assist in financing and acquiring a valuable interest with said company,' did you have any conversation with Mr. Deyot as to what was meant by 'assisting in financing'? A. No. He told me that he wanted to purchase this valuable interest in the company."

Further testimony of the prosecuting witness disclosed what her understanding was with reference to the money which she advanced to defendant. In regard thereto, she testified as follows:

"Q. Mr. Deyot promised to return the $3000 at the expiration of the year? A. On or before one year.

"Q. And, in addition to the $3000, you were to receive seven per cent interest? A. Yes.

"Q. What was that interest to be? A. That was interest on the $3000 that I let him have for a year.

"Q. He was paying that interest to you for the use of that money for the year? A. Yes."

As to whether the money advanced by the prosecuting witness was to be expended or "invested" by defendant in accordance with instructions given to him by the prosecuting witness, the following testimony is significant:

"Q. Did you, at the time you gave this $3000 to Mr. Deyot, instruct him as to how he was to expend that money? A. Why, he wanted my $3000 to buy this valuable interest in the Columbia Cement Company.

"Q. You never instructed him as to how he should expend the money? A. Why, that is what he told me he was going to do with it. That is why I gave it to him.

"Q. For the purpose of acquiring a valuable interest in the Columbia Cement Company? A. Yes—and giving me $12,000 worth of stock.

"Q. But as to how he was to expend it, you gave him no instructions, and had no conversation as to how he was to acquire that valuable interest? A. Why, no. He told me that he was going to do it. . . .

"Q. Did you discuss with Mr. Deyot what the value of this interest that he was to acquire was—what the market value of this interest he was to acquire was to be? A. No. I did not."

As showing the interpretation which the parties to the agreement placed upon its terms, a further and later agreement between them witnesses the following stipulation:

"That, whereas, certain agreements have been entered into by and between the parties hereto, and by a mutual settlement of said agreements it has been agreed that the party of the second part owes to the party of the first part the sum of three thousand dollars ($3,000), with interest at seven per cent (7%) from March 14, 1924, . . . "

At the time of entering into such agreement, the evidence shows that each of the parties was represented by an attorney.

It thus appears that by agreement of the parties the prosecuting witness advanced to defendant the sum of $3,000 for the purpose of assisting him "in financing and acquiring a valuable interest" in the corporation, which "he (defendant) wanted to purchase," for which the prosecuting witness was to receive "not less that $12,000 common stock at par," and within one year to have her "investment" of $3,000, with interest at the rate of seven per cent per annum, returned to her; that defendant did not state that the "valuable interest" or any part thereof which he expected to acquire was to be the property of the prosecuting witness; and that the prosecuting witness gave to defendant no instructions as to how he was to expend the money which was advanced by the prosecuting witness to defendant; nor was there any intimation that the "valu-

able interest'' in question consisted wholly or in part of the ''$12,000 common stock at par.'' By some undisclosed means, but by way of ''financing,'' which included the use of the $3,000 belonging to the prosecuting witness, it is more or less apparent that defendant expected to become the owner of a large block of stock in the corporation; but that neither at the time the $3,000 was delivered to defendant, nor at any time during the negotiations of the parties, was any mention made of any specific stock which was to be purchased by defendant for the use of the prosecuting witness.

By section 503 of the Penal Code the crime of embezzlement is defined as the fraudulent appropriation of property by a person to whom it has been *intrusted;* and in the case of *People* v. *Shearer,* 143 Cal. 66, 67 [76 Pac. 813], it is said that it is essential to the commission of the crime of embezzlement that there should be a fraudulent appropriation of property to some use or purpose *not in the due and lawful execution of his trust* by one into whose possession it has come by reason of *some relation of trust or confidence.*

On consideration of the evidence, including the several agreements between the prosecuting witness and defendant, and especially the testimony of the former, it is impossible to arrive at the conclusion that a trust relationship existed between the prosecuting witness and defendant with reference to the $3,000 which was advanced by the prosecuting witness to defendant. To the contrary, the evidence tends to establish the fact that the money involved in the transaction was a loan only, on which the prosecuting witness was to receive a stipulated rate of interest, together with ''not less than $12,000 common stock at par.'' In such circumstances it is clear that the evidence fails to show any ''fraudulent appropriation of property by a person to whom it has (had) been entrusted'' (sec. 503, Pen. Code), and therefore that it was insufficient to support the verdict.

The judgment and the order denying the motion for a new trial are reversed.

Conrey, P. J., and York, J., concurred.